# EXHIBIT B

*City of Rochester Police Department*
*General Order 502*

 

# Rochester Police Department
# General Order

| EFFECTIVE DATE:<br>March 23, 2017 | SUBJECT:<br>EQUITABLE POLICING | ORDER#<br>502 |
|---|---|---|
| RESCINDS:<br>G.O. 502 (04/20/15) | REFERENCE STANDARD(S):<br><br>NYS: | PAGE<br>1 of 11 |
| ATTACHMENT(S):<br>(A) Resolution No. 2017-5 (Sanctuary City Resolution) | | |
| Chief's Signature: *Michael L. Ciminelli* | | |

I. **DEFINITIONS**

A. <u>**Article III Judge:**</u>  Means a Federal Judge or Magistrate Judge of a court established under Article III of the U.S. Constitution, e.g., federal courts of appeals and district courts.  This does not include CBP or ICE officials or other immigration officers authorized to issue a civil immigration detainer under 8 C.F.R. § 287.7.

B. <u>**Bias-Based Profiling**</u>:  The targeting or stopping of an individual based solely on a common trait of the individual, including but not limited to: age, race, creed, color, religion, national origin, citizenship or immigration status, gender, sexual orientation, gender identity, gender expression, disability, marital status, limited English proficiency, or economic status.

C. <u>**CBP**</u>:  Means United States Customs and Border Protection, a federal law enforcement agency responsible for detecting and preventing the illegal entry of persons and goods into the United States.

D. <u>**Civil Immigration Detainer (also called a "civil immigration warrant")**</u>:  Means a detainer issued pursuant to 8 C.F.R. § 287.7 by an authorized immigration officer, or any similar request from CBP or ICE for detention of a person suspected of violating civil immigration law.

E. <u>**Criminal Profiling**</u>:  An investigative method in which members through observation of activities and environment, identify suspicious people and develop legal grounds to stop them for questioning.

| SUBJECT:<br>EQUITABLE POLICING | ORDER#<br>502 | PAGE#<br>- 2 - |
|---|---|---|

    F.    **Gender Expression:** Is a person's external representation or expression of gender identity to others, often through behavior, clothing, hairstyle, voice, or body characteristics.

    G.    **Gender Identity**: Is an individual's internal sense of being male, female, both, or neither. Individuals determine their own gender identity.

    H.    **ICE**: Means United States Immigration and Customs Enforcement, a federal law enforcement agency responsible to enforce federal laws governing border control, customs, trade, and immigration.

    I.    **Judicial Warrant**: Means a warrant based on probable cause and issued by an Article III federal judge or a federal magistrate judge that authorizes federal immigration authorities to take into custody the person who is the subject of the warrant. A judicial warrant does **not** include a civil immigration detainer or warrant, administrative warrant, or other document signed only by CBP, ICE, or other non-judicial immigration officials.

    J.    **Limited English Proficiency Persons**: Individuals who do not speak English as their primary language and possess a limited ability to read, speak, write, or understand English.

II.    **LEGAL ASPECTS**

    A.    The Fourth Amendment to the U.S. Constitution protects the "right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." Similar protections are found in Article I, Section 12 of the New York State Constitution.

    B.    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits states from denying any person within its jurisdiction the equal protection of the laws. Discriminatory enforcement or application of the law is prohibited. Similar protections are found in Article I, Section 11 of the New York State Constitution.

    C.    The City of Rochester has enacted Resolution No. 2017-5, affirming that the City of Rochester is a Sanctuary City committed to equal rights for all ("Sanctuary City Resolution"). The full text of this Resolution is found in Attachment A.

| SUBJECT:<br>EQUITABLE POLICING | ORDER#<br>502 | PAGE#<br>- 3 - |
|---|---|---|

    D.    Immigration enforcement is the responsibility of the Federal Government.  Federal law does not require local law enforcement to inquire into an individual's immigration status.

## III.    POLICY

    A.    The Rochester Police Department (RPD) neither condones nor permits the use of any bias-based profiling in arrests, traffic contacts, field contacts, investigations, or asset seizure and forfeiture efforts, and is committed to equitable policing and equal rights for all.

    B.    In all activities members are subject to and will comply with the Constitutions of the United States and the State of New York, and all applicable Federal, New York State, and local laws.

    C.    Members shall not perform the functions of a federal immigration officer or otherwise engage in the enforcement of federal immigration law under 8 U.S.C. § 1357(g) or any other law, regulation, or policy.  Members will not be assigned to a CBP or ICE task force.

    D.    Persons in RPD custody will be subject to the standard policies and procedures regarding the issuance of appearance tickets and pre-arraignment bail regardless of actual or suspected citizenship or immigration status.  *See* G.O.s 520, *Prisoner Transporting & Processing*, and 532, *Appearance Tickets*.

## IV.    CRIMINAL PROFILING PROCEDURES

    A.    Members may use criminal profiling as an investigative method.

    B.    All vehicle and individual stops, investigative detentions, arrests, search and seizures (to include asset forfeiture procedures) by members of the RPD will be based on a standard of reasonable suspicion, probable cause, or as otherwise required by the U.S. Constitution and the New York State Constitution. Members must be able to articulate specific facts, circumstances, and conclusions which provide objective, credible evidence to support probable cause or reasonable suspicion for a stop, investigative detention, or arrest.

| SUBJECT:<br>EQUITABLE POLICING | ORDER#<br>502 | PAGE#<br>- 4 - |
|---|---|---|

### V. SANCTURY CITY PROCEDURES

**NOTE:** These procedures do **not** apply to members assigned to a federal law enforcement task force. Such members will adhere to the policies and procedures of the federal agency to which they are assigned.

A. Members will not engage in police activities solely for the purpose of enforcing federal immigration laws or policies.

B. Members will not inquire about the immigration status of an individual, including a crime victim, a witness, or a person who calls or approaches the police seeking assistance, unless there is a specific and articulable need to do so to investigate criminal activity.

C. Members will not inquire about or request proof of immigration status or citizenship when providing any police services or benefits unless one or more of the following conditions exist:

   1. The provision of such police service or benefit is contingent upon one's immigration or citizenship status;

   2. Such inquiry is required by federal, state, or local laws; or,

   3. There is a specific and articulable need to do so to investigate criminal activity.

D. <u>Language Translation</u>.

   1. Members will not request nor utilize CBP or ICE personnel to assist with language translation unless there is a situation involving an imminent threat to life or safety.

   2. Note: this does not apply to a joint investigation or task force investigation in which CBP or ICE is participating.

E. <u>Use of Immigration Documents as Proof of Identity</u>.

   1. Members will not request immigration documents but may accept and review them if voluntarily offered by a person in response to a request for proof of identity:

      a)     during an arrest, traffic stop, or investigative detention; and,

      b)     for purposes of issuing an appearance ticket or setting pre-arraignment bail. *See* G.O.s 520, *Prisoner Transporting & Processing*, and 532, *Appearance Tickets*.

2. If provided immigration documents for identification purposes, members will not contact CBP, ICE, or other federal immigration authorities regarding the person unless necessary to investigate criminal activity, and in accordance with the procedures set forth below.

F. <u>Procedures to Contact, Request, or Provide Assistance to CBP or ICE</u>.

**Note:** these procedures do **not** apply to a joint investigation or task force investigation in which CBP or ICE is participating (e.g., the Greater Rochester Area Narcotics Enforcement Team (GRANET)); and situations involving an imminent threat to life or safety (e.g., a call for back-up assistance, "officer in trouble," response to a crime in progress, etc.).

1. Any contact or requests for assistance to CBP or ICE, or requests from CBP or ICE for RPD assistance, must be authorized by Captain or above during business hours, or the Staff Duty Officer (SDO) during non-business hours.

2. All such contacts or requests require a specific and articulable need for a criminal investigation, or must be otherwise permitted under § V.G of this Order.

      a)     If the *only* criminal charge involved is False Personation (NYPL § 190.23) or Criminal Impersonation 2nd Degree (NY&PL § 190.25), members may contact CBP or ICE to help ascertain the identity of a person only after all other available means to ascertain the true identity have been tried and have failed. Such requests for CBP or ICE assistance must be approved in advance in accordance with § V.F.1 of this Order.

| SUBJECT: EQUITABLE POLICING | ORDER# 502 | PAGE# - 6 - |
|---|---|---|

G. <u>Detention and Access Based on Immigration Violations</u>.

    1. Members **may**:

        a) detain and turn over to CBP or ICE a person named in a judicial warrant or federal criminal arrest warrant;

        b) assist CBP, ICE, and other federal law enforcement officials in making a lawful warrantless arrest for a federal crime; and,

        c) provide CBP or ICE access to a person in RPD custody or the use of RPD facilities to question or interview a person **only** when the person is named in a judicial warrant or federal criminal arrest warrant; or when there is probable cause to believe the person has committed a federal crime.

    2. Members will **not** detain or turn over to CBP or ICE a person named in a civil immigration detainer, and will **not** assist CBP or ICE in taking such persons into custody.

H. <u>Documentation of Contact and Activities with CBP and ICE</u>.

    **Note:** these procedures do **not** apply to a joint investigation or task force investigation in which CBP or ICE is participating (e.g., GRANET); and, situations involving an imminent threat to life or safety (e.g., a call for back-up assistance, "officer in trouble," response to a crime in progress, etc.).

    1. Members will document <u>**all**</u> contacts and requests to CBP and ICE for assistance, and <u>**all**</u> requests from CBP or ICE for RPD assistance, as set forth below. All such contacts and requests must be documented on a Field Interview Form (FIF) as set forth below. This FIF will be in addition to any other report required by RPD policies or procedures.

    2. Members will include the following information in FIFs documenting all contacts and activities with CBP and ICE:

      a)    Use the "Immigration Contact" field on the FIF report form to specify the contact type based on who initiates the contact:

          (1)    If CBP or ICE initiates contact to RPD, select "Contacted by Immigration."

          (2)    If an RPD employee contacts CBP or ICE, select "Immigration Contacted by RPD."

      b)    Include the following information as applicable:

          (1)    date, time, and location;

          (2)    related additional CR#s, if any;

          (3)    reason for the contact or request made to or received from CBP or ICE;

          (4)    name and agency affiliation of the person making the request or contact, and of any CBP or ICE personnel who respond;

          (5)    name of the RPD supervisor (Captain or above; or the SDO) approving or denying the request or contact; and,

          (6)    action taken if request or contact is approved.

I.    <u>Monroe Crime Analysis Center (MCAC)</u>.

RPD employees assigned to MCAC may respond to requests for information from CBP or ICE in accordance with MCAC policies and procedures.

## VI.    TRAINING

All members of the RPD will receive training in bias-based profiling issues and other requirements of this Order, including legal aspects.

| SUBJECT: EQUITABLE POLICING | ORDER# 502 | PAGE# - 8 - |
|---|---|---|

## VII. MONITORING AND CORRECTIVE MEASURES

A. Members of the RPD will report any observed or known violations of bias-based profiling and other violations of this Order to their immediate supervisor.

B. Supervisors will initiate action(s) in response to acts of bias-based profiling and other violations of this General Order as outlined in G.O.s 301, *Discipline* and 310, *Citizen Complaints*.

C. Monitoring and Ensuring Compliance.

   1. On a quarterly basis the Office of Business Intelligence (OBI) will compile reports involving RPD contacts or actions taken involving CBP and ICE. OBI will distribute the reports to the Chief, Deputy Chiefs, and Commanders.

   2. The DCC will review the pertinent documentation and submit a written report to the Chief of Police summarizing RPD contacts and actions with CBP or ICE, noting any concerns regarding compliance with applicable policies and procedures, and any recommendations.

   3. The Chief will review the report and ensure any required corrective actions are taken. The Chief will forward the report and documentation of corrective actions taken if applicable to the Mayor.



**City of Rochester**

**City Clerk's Office**

# Certified Resolution

Rochester, N.Y., _____

## TO WHOM IT MAY CONCERN:

I hereby certify that at a meeting of the Council of the City of Rochester, held in the City Hall, on **February 21, 2017**, a resolution was **Adopted**, of which the following is a true copy; and at the time said resolution was adopted, the Council consisted of Nine (9) members.

Resolution No. 2017-5

**Resolution affirming that Rochester is a Sanctuary City committed to equal rights for all, as amended**

WHEREAS, The City of Rochester, the home of Frederick Douglass and Susan B. Anthony, has a long tradition of support for equal rights for all people, including immigrants and refugees, as exemplified by City Council Resolution No. 86-29 recognizing Rochester as a City of Sanctuaries;

WHEREAS, Chapter 63 of the City Code requires that the City provide equal access to public services and prohibits discrimination in City services on the basis of age, race, creed, color, national origin, gender identity or expression, sexual orientation, disability or marital status;

WHEREAS, federal immigration enforcement is the responsibility of federal enforcement agencies, not local government agencies;

WHEREAS, federal law does not require local law enforcement or other local service providers to inquire into an individual's immigration status;

WHEREAS, in response to changes in federal immigration enforcement practices and priorities, Cities across the United States have reaffirmed their support for the principle of sanctuary for persons fleeing persecution and on January 19, 2017, the New York State Attorney General provided local governments and law enforcement agencies with guidance for improving public safety by protecting vulnerable immigrant communities; and

WHEREAS, the City of Rochester wishes to join these cities and to reaffirm its continued support to its residents in their efforts to maintain and further human rights for all who come within its borders, including immigrants and refugees; and

WHEREAS, a policy that assures immigrants and refugees that they can contact the police and other City agencies without fear of adverse immigration consequences will enhance public safety for all citizens; and

WHEREAS, the Council finds that it is in the public interest for Rochester to adopt "Sanctuary City" policies.

NOW, THEREFORE, BE IT RESOLVED, by the Council of the City of Rochester as follows:

1. That the Mayor and City Council reaffirm the City of Rochester's commitment that it is one community; that is welcoming and inclusive of all, is united and strengthened by our diversity and committed to upholding and protecting the civil and human rights of all individuals that come within its borders, including immigrants and refugees;

2. The City Council hereby requests that the Mayor and the City administration implement policies that further the City's role as a Sanctuary City to ensure compliance with the objectives herein, subject to Federal, state and local laws and the Constitutions of the United States of America and the State of New York;

3. The Police Department shall not engage in certain activities solely for the purpose of enforcing federal immigration laws, including not inquiring about the immigration status of an individual, including a crime victim, a witness, or a person who calls or approaches the police seeking assistance, unless necessary to investigate criminal activity ~~by that individual~~, and shall not stop, question, interrogate, investigate, or arrest an individual based solely on actual or suspected immigration or citizenship status;

4. That City personnel shall not inquire about or request proof of immigration status or citizenship when providing services or benefits, except where the receipt of such services or benefits are contingent upon one's immigration or citizenship status or where inquiries are otherwise lawfully required by federal, state, or local laws, or where such information is needed for a criminal investigation;

5. That the City shall not use its funds or personnel to enforce <ins>or to assist in the enforcement of</ins> Federal immigration policies or participate in any program requiring registration of individuals on the basis of religion, race, gender,<ins> gender identity or expression,</ins> sexual orientation, ethnicity, or national origin, except to the extent specifically required by law and subject to the principles embodied in the Constitutions of the United States and the State of New York.

6. This resolution shall take effect thirty days after the date it is adopted.

Strikeout indicates deleted text, new text is underlined

Adopted by the following vote:

Ayes -   President Scott, Councilmembers Clifford, Conklin, Haag, McFadden, Miller, Ortiz, Patterson, Spaull - 9.

Nays -   None - 0.

Attest ___Hayel Washington___
City Clerk