UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA,

        Plaintiff,

    v.

THE CITY OF ROCHESTER; MALIK D. EVANS, Mayor of Rochester, in his Official Capacity; ROCHESTER CITY COUNCIL; MIGUEL A. MELENDEZ, JR., President of the Rochester City Council, in his Official Capacity,

        Defendants.

**ANSWER**

Case No. 25-cv-06226 (FPG)

On March 24, 2025, federal immigration enforcement agents made a call directly to the City of Rochester's 911 Center, requesting emergency assistance from the RPD in the context of a car stop. Unbeknownst to the City of Rochester at the time, this purported emergency call would prove to be a sham. When Rochester police officers arrived on the scene, there was no emergency nor any sense of exigency or urgency among the many federal law enforcement agents present. Notwithstanding the lack of any emergency, the federal law enforcement agents persisted in their attempts to co-opt Rochester police into enforcing federal immigration regulations, by directing police officers to remove the occupants from the van, and by standing by and watching as Rochester police placed those occupants in handcuffs. Upon information and belief, at no point were any of the individuals in the vehicle suspected of committing any crime, and their detention was for civil immigration enforcement purposes only.

In short, federal law enforcement agents at the scene unlawfully conscripted local police to engage in federal civil immigration enforcement in violation of the Tenth Amendment to the

1

Constitution. This suit represents the federal government's formal ratification of the commandeering of local police to enforce federal immigration regulations and policy.

The City's Sanctuary City policy was originally implemented in 1986, and is a critical bulwark against such commandeering and overreach by the federal government. Had the City's Sanctuary City policy been followed fully on March 24, 2025, Rochester police would have made the very same emergency response to the emergency call for assistance, but events would have been different once police arrived at the scene and realized that there was no present emergency. Upon realizing that there was no emergency, Rochester police should have stood by to guarantee the continued safety of federal officers and security of the scene while the federal officers engaged in the car stop that they had initiated for federal immigration enforcement purposes. The police officers on the scene have since been trained that this is exactly the approach that they should have taken under the City's Sanctuary City policy.

In the instant suit, the federal government recognizes that Rochester police responded to the emergency call, but appears to fault the City for not allowing its police to be commandeered by the federal government. The federal government appears to believe that the Supremacy Clause allows such commandeering. It does not.

Accordingly, defendants City of Rochester, Mayor Malik D. Evans, Council President Miguel A. Melendez, Jr., and City Council, by their attorney Patrick Beath, Corporation Counsel for the City of Rochester, as and for an answer to the Complaint, state:

1. Deny the allegations in paragraph one, but admit that on March 24, 2025, Rochester Police Officers responded to a purported emergency call made by a U.S. Customs and Border Protection ("CBP") dispatcher directly to the City's 911 Center. A copy of the audio

recording of that call is provided as Exhibit B to the Answer.[1]  Further admit that RPD officers promptly responded to the call in emergency mode, but almost immediately after arriving on the scene, cancelled the emergency call because there was no emergency situation and there were numerous ostensibly capable federal law enforcement agents already on the scene.  Despite this, as clearly depicted on police body camera video, the federal officers essentially turned the scene over to the RPD, conscripting local law enforcement officers to carry out federal immigration policy in direct violation of the 10th Amendment to the U.S. Constitution.  A copy of the body camera video is provided as Exhibit C to the Answer.[2]  Admit further that, in responding to the emergency call, RPD officers did "the right thing" under both federal law and the City's Sanctuary City policy.  Any violation of law was made by federal agents, who called local law enforcement to the scene on a pretext, then commandeered local law enforcement to carry out federal immigration policy.  In filing this suit, the U.S. government formally ratifies the illegal actions of the federal agents at the scene of the March 24, 2025 car stop.

    2.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2, except deny that the City of Rochester's Sanctuary City policy hinders federal law enforcement and deny that the City of Rochester refuses to cooperate with lawful requests for information from federal law enforcement agents.

    3.    Deny the allegations set forth in paragraph 3.

    4.    Deny the allegations set forth in paragraph 4 and further aver that nothing in the City's Sanctuary City policy impedes communication with the federal government, nor were any

---

[1] Because the recording is a digital file, it will be provided to Court and counsel on a thumb drive.

[2] Because the Body Camera Video is a digital file, it will be provided to Court and counsel on a thumb drive.

such communications at issue in the context of the CBP's pre-textual and misleading "emergency" call of March 24, 2025.

5.     Deny the allegations set forth in paragraph 5, except admit that Mayor Evans made a statement on March 26, 2025 that the City of Rochester did and will continue to respond to emergency calls for assistance from federal law enforcement officers. Further admit that Mayor Evans made "crystal clear" that the City of Rochester will not allow its limited local law enforcement resources to be unlawfully conscripted by federal law enforcement agents in order to carry out federal immigration policy by detaining individuals for non-criminal purposes, a responsibility that is exclusively that of the federal government.

6.     Deny the allegations in paragraph 6.

7.     The allegations set forth in paragraphs 7 and 8 comprise legal conclusions, not factual averments, to which no response is necessary. To the extent a response is necessary, defendants deny that the Supremacy Clause permits the federal government or federal law enforcement agents to conscript and commandeer local law enforcement to carry out federal immigration enforcement policy in violation of the Tenth Amendment to the Constitution.

8.     Admit the allegations set forth in paragraphs 9, 10 and 11 concerning jurisdiction and venue.

9.     Admit the allegations set forth in paragraph 12 that the United States of America has the legal responsibility under the Constitution and federal statutes to regulate immigration.

10.    Admit the allegations set forth in paragraph 13, the City of Rochester is a municipal corporation in the State of New York, County of Monroe.

11.    Admit the allegations set forth in paragraph 14 that Malik D. Evans is the Mayor of the City of Rochester and refer the Court to Article III of the Rochester City Charter which

sets forth the powers of the Mayor, but note that the Mayor's "power to appoint people to, and fire them from, certain positions within his administration" may be qualified by union contracts and civil service law.

12. Admit the allegations set forth in paragraph 15 that Rochester City Council is the legislative body for the City and refer the Court to Article V of the Rochester City Charter, which sets forth the powers and function of the Rochester City Council.

13. Admit the allegations set forth in paragraph 16 that Miguel A. Melendez, Jr. is the President of Rochester City Council.

14. The allegations set forth in paragraphs 17-24 and 26 comprise conclusions of law, rather than averments of facts, to which no response is required.

15. The allegations set forth in paragraph 25 sets forth conclusions of law, rather than averments of fact, to which no response is required. To the extent a response is required, defendants admit that 8 U.S.C. 1373 was enacted "to give state and local officials the authority to communicate with [federal immigration authorities] regarding the presence, whereabouts, or activities of illegal aliens, notwithstanding any local laws to the contrary," and further aver that U.S. Department of Justice guidance provides that "<u>Section 1373 does not impose on states and localities the affirmative obligation to collect information from private individuals regarding their immigration status, nor does it require that states and localities take specific actions upon obtaining such information</u>. Rather, the statute prohibits government entities and officials from taking action to prohibit or in any way restrict the maintenance or intergovernmental exchange of such information, including through written or unwritten policies or practices." *New York v. U.S. Dep't of Just.*, 951 F.3d 84, 99 at fn. 13 (2d Cir. 2020)(emphasis added).

16. Deny the allegations set forth in paragraph 27 of the Complaint, except admit that

5

on May 27, 1986, the Rochester City Council passed resolution 86-29, titled "City of Sanctuaries," which remains in effect.  A copy of the City of Sanctuaries resolution is appended hereto as Exhibit A.  Among other things, the 1986 City of Sanctuaries resolution:

    a. Recognizes that the City of Rochester "has a long tradition of support for the vulnerable and dispossessed, as exemplified by Rochester citizens' strong acceptance of Frederick Douglass, whose statue stands in Highland Park, and the Rev. Thomas James, whose bust is in the Hall of Justice, and by Rochester citizens' well-known participation in the underground railroad one hundred years ago, at considerable risk of fines and jail sentences"

    b. Expresses that the City of Rochester "wishes to continue supporting its citizens in their efforts to maintain and further human rights for its citizens and for all who come within its borders"

    c. Observes that "Rochester has become a 'City of Sanctuaries' underscoring both the historical and present effort by numerous communities within Rochester to provide shelter to many who are fleeing general conditions of persecution in their homelands"

    d. Finds "that immigration and refugee policy is a matter of Federal jurisdiction; that Federal employees, not City employees, should be considered responsible for implementation of immigration and refugee policy; and further that the City Council requests the administration to direct employees to exclude refugee status as a consideration in their daily activities and routine dealings with the public, with the provisio [sic] that this directive should not be construed as approval to violate any law or encourage interference in law enforcement efforts"

17. Deny the allegations set forth in paragraph 28, except admit that on February 21, 2017, Rochester City Council adopted Resolution 2017-5, "Resolution affirming that Rochester is a Sanctuary City committed to equal rights for all." Consistent with federal law and the DOJ guidance expressly quoted in paragraph 15, above, the 2017 Resolution notes that "federal law does not require local law enforcement or other local service providers to inquire into an individual's immigration status." The 2017 Resolution also expressly requires compliance with federal law.

18. Deny the allegations set forth in paragraph 29, except admit that the 2017 Resolution reiterates that "federal immigration enforcement is the responsibility of federal enforcement agencies, not local government agencies" and sets forth policies consistent with the DOJ guidance quoted in paragraph 15 recognizing that, at federal law, there is no affirmative obligation for local authorities to collect information from private individuals regarding their immigration status, or to take specific actions upon obtaining such information. In no manner does the 2017 Resolution unlawfully limit local cooperation with federal immigration enforcement.

19. As to paragraphs 30 through 33, admit that the quoted language from the 2017 Resolution is accurate, but deny the implication that said language limits local cooperation with or prohibits local participation in federal immigration enforcement in a manner that is inconsistent with or unlawful under federal law.

20. Admit the allegations in paragraph 34.

21. Deny the allegations set forth in paragraph 35, except admit that General Order 502 reiterates that immigration enforcement is a federal function, and in delineating the roles of local law enforcement and federal immigration enforcement, rationally and reasonably identifies

a number of those federal law enforcement entities understood to enforce federal immigration regulations.

22. Deny the allegations set forth in paragraphs 36 and 37, and direct the Court to the complete and accurate text of General Order 502, appended to the Complaint as Exhibit B.

23. Deny the allegations set forth in paragraph 38.

24. Deny the allegations set forth in paragraph 39 of the Complaint, except admit that, consistent with GO 502 and federal law, on March 24, 2025, the Rochester police department responded to what they believed was a bona fide call for emergency assistance from federal immigration enforcement agents. Upon arrival at the scene, it became clear that no such emergency existed.

25. Deny the allegations set forth in paragraph 40, and direct the Court to the complete and accurate text of General Order 502, appended as Exhibit B to the Complaint.

26. Deny the allegations set forth in paragraphs 41 through 43, except admit that the RPD issued Training Bulletin No. P-75-17 concerning the 2017 Resolution, and direct the Court to the complete and accurate text of the training bulletin appended to the Complaint as Exhibit C.

27. Deny the allegations set forth in paragraph 44, except admit that Rochester police responded to the federal immigration authorities' pre-textual call for assistance in accordance with the City's policies, but thereafter their official services were commandeered by federal law enforcement officers in violation of both the City's policies and the U.S. Constitution.

28. Deny the allegations set forth in paragraph 45, except admit that Mayor Evans made a statement on March 26, 2025 that the City of Rochester did and will continue to respond to emergency calls for assistance from federal law enforcement officers, and that Mayor Evans also made "crystal clear" that the City of Rochester will not allow its limited local law

enforcement resources to be unlawfully conscripted by federal law enforcement agents in order to carry out federal immigration policy by detaining individuals for non-criminal purposes, a responsibility that is exclusively that of the federal government.

29. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 46, but admit that the Rochester police officers involved in the March 24, 2025 incident received additional training on the City's policies to better ensure that the City's law enforcement officers would not again be conscripted into doing the work of federal immigration enforcement authorities.

30. Deny the allegations set forth in paragraph 47, but admit that City employees are expected to comply with City policies and failure to do so can result in training, counseling or discipline based upon a number of factors, including the employee's civil service status and union membership.

31. Admit the allegations set forth in paragraph 48, including the fact that review of body camera footage revealed that the emergency call was a sham and that there was no emergency situation at the time that Rochester police officers arrived at the scene. Deny any implications from the Complaint's use of the modifier "likewise."

32. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 49, except admit that there is an international airport in the City of Rochester and that the City of Rochester borders Lake Ontario.

33. Paragraph 50 sets forth conclusions of law, rather than averments of fact. To the extent any of the representations in this paragraph concerning 8 U.S.C. § 1373 are inconsistent with the DOJ guidance set forth in paragraph 15 above, defendants deny those inconsistent portions.

34. Deny the allegations set forth in paragraphs 51, 52, 53, 55, 56, and 57.

35. Admit the allegations set forth in paragraph 54 and aver, in the interest of being "crystal clear," that the City of Rochester and its officials have not and do not assist removable aliens' purported evasion of federal law enforcement.

36. In response to paragraph 58, defendants reiterate and reallege each and every foregoing paragraph.

37. The allegations in paragraph 59 comprise conclusions of law rather than averments of fact, to which no response is required. To the extent a response is required, defendants admit that the quoted language is taken from the Constitution's Supremacy Clause, and that the Supremacy Clause makes the Tenth Amendment, and it's prohibition against federal commandeering of State and local resources, supreme to all other laws.

38. Deny the allegations set forth in paragraphs 60 through 64.

39. In response to paragraph 65, defendants reiterate and reallege each and every foregoing paragraph.

40. Deny the allegations set forth in paragraphs 66 through 68.

41. In response to paragraph 69, defendants reiterate and reallege each and every foregoing paragraph.

42. Deny the allegations set forth in paragraphs 70 through 72.

### FIRST AFFIRMATIVE DEFENSE

43. The Complaint fails to state a claim for relief.

### SECOND AFFIRMATIVE DEFENSE

44. The City Council, Mayor Evans and Council President Melendez are not proper parties. The City Council is the legislative arm of City government and is not a corporate entity that may be subject to suit. Mayor Evans and President Melendez, sued only in their official

capacities, should be dismissed as the real party in interest in an official capacity suit is the governmental entity and not the named official. *E.g., Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002).

### THIRD AFFIRMATIVE DEFENSE

45. The City of Rochester's 1986 City of Sanctuaries Resolution, the 2017 Resolution, General Order 502 and Training Bulletin P-75-17 are all legitimate exercises of local authority, consistent with and protected by the Tenth Amendment.

### FOURTH AFFIRMATIVE DEFENSE

46. Plaintiff's application of the Supremacy clause is facially overbroad and in direct conflict with the Tenth Amendment to the Constitution.

### FIFTH AFFIRMATIVE DEFENSE

47. Under the Tenth Amendment, Plaintiff is barred from commandeering local City of Rochester resources to engage in affirmative enforcement of federal immigration policy in the manner that took place on March 24, 2025, or in the manner underlying the allegations in the instant Complaint.

### SIXTH AFFIRMATIVE DEFENSE

48. Plaintiff fails to plausibly allege any concrete injury in fact resulting from the City of Rochester's 1986 City of Sanctuaries Resolution, the 2017 Resolution, General Order 502 and Training Bulletin P-75-17 and therefore lacks standing.

### SEVENTH AFFIRMATIVE DEFENSE

49. The City policies here at issue all address local problems and issues, and do not conflict with the language of any federal statute. None of the at-issue local policies are preempted by the Supremacy Clause or federal statute.

### EIGHTH AFFIRMATIVE DEFENSE

50. 8 U.S.C. 1373, because it does not prohibit or regulate private actors, cannot serve

as a basis for preemption.

### NINTH AFFIRMATIVE DEFENSE

51. The City policies here at issue neither regulate nor discriminate against the federal government. The federal government may—and does—continue to carry out its immigration enforcement function unimpeded in the City of Rochester.

### TENTH AFFIRMATIVE DEFENSE

52. The Complaint is not signed by any attorney of record electronically or otherwise and, in accordance with Federal Rule of Civil Procedure 11, should be stricken if not promptly signed.

### ELEVENTH AFFIRMATIVE DEFENSE

53. Because the Complaint admits that the Rochester Police Department responded to the CBP call for emergency assistance on March 24, 2025, plaintiff fails to show that any claim premised upon alleged non-assistance on that occasion is ripe for adjudication.

**WHEREFORE,** defendants demand judgment dismissing the Complaint, together with the costs and disbursements of this action and such other and further relief which to the Court may seem just and proper.

Dated:   May 21, 2025

                          /s/
                    BY:   PATRICK BEATH
                          Corporation Counsel
                          *Attorney for Defendants*
                          Rochester City Hall
                          30 Church Street, Rm. 400A
                          Rochester, New York 14614
                          (585) 428-6812

To:

**Alessandra Faso**
U. S. Department of Justice - Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
202-305-9855
Email: alessandra.faso@usdoj.gov


**Alexandra McTague**
U. S. Department of Justice - Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
202-718-0483
Email: alexandra.mctague2@usdoj.gov

**Glenn Matthew Girdharry**
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
Liberty Square Building
450 5th Street NW
Suite 5052
Washington, DC 20001
202-532-4807
Fax: 202-305-7000
Email: glenn.girdharry@usdoj.gov