UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

THE UNITED STATES OF AMERICA,

                           Plaintiff,

                                                                                          Case # 25-CV-6226-FPG

v.

                                                                                        DECISION & ORDER

THE CITY OF ROCHESTER, *et al.*,

                           Defendants.

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Diamond Alt. Energy, LLC v. E.P.A.*, 145 S. Ct. 2121, 2133 (2025). "For a lawsuit to constitute a case within the meaning of Article III, the plaintiff must have standing to sue." *Id.* "[T]he irreducible constitutional minimum of standing contains three elements: injury in fact, causation, and redressability." *Id.* (internal quotation marks omitted). The third requirement, redressability, "requires that the court be able to afford relief through the exercise of its power." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (internal emphasis omitted).

In April 2025, the United States brought this action challenging the City of Rochester's "Sanctuary City" policies on Supremacy Clause grounds. ECF No. 1. Specifically, the United States challenged (1) City Council Resolution No. 2017-5; (2) Rochester Police Department General Order 502; and (3) Rochester Police Department Training Bulletin P-75-17. *See* ECF Nos. 1-2, 1-3, 1-4. As relief, the United States requested that the Court:

- "enter a judgment declaring that Resolution No. 2017-5, General Order 502, and Training Bulletin No. P-75-17 violate the Supremacy Clause and are therefore invalid";

- "enter a judgment declaring that Resolution No. 2017-5, General Order 502, and Training Bulletin No. P-75-17 violate 8 U.S.C. §§ 1373 and 1644 and are therefore invalid"; and

1

- "issue preliminary and permanent injunctions that prohibit Defendants as well as their successors, agents, and employees, from enforcing Resolution No. 2017-5, General Order 502, and Training Bulletin No. P-75-17."

ECF No. 1 at 16.

Thus, in its complaint, the United States articulated an ostensibly valid theory of redressability: it sought injunctive relief prohibiting Defendants from enforcing the 2017 directives, as well as related declaratory relief, so as to allow local police to consult and communicate with federal immigration authorities. *See* ECF No. 1 at 2, 16; *see also Diamond*, 145 S. Ct. at 2133 (noting that "enjoining [an] action" that causes an injury "will typically redress that injury"); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (explaining that a request for declaratory relief can satisfy "Article III's case-or-controversy requirement").

Defendants—the City of Rochester, Malik D. Evans (in his official capacity as Mayor of the City of Rochester), the Rochester City Council, and Miguel A. Melendez, Jr. (in his official capacity as President of the Rochester City Council)—appeared and duly filed their answer. ECF No. 6. Despite this, the United States chose not to pursue the preliminary injunctive relief it mentioned in its complaint.

Thereafter, Defendants moved for judgment on the pleadings. ECF No. 8. The United States responded with a cross-motion for judgment on the pleadings, asking the Court to "enter a judgment *holding* that Resolution 2017-5, General Order 502, and Training Bulletin P-75-17 are void and unenforceable as contrary to the Supremacy Clause and the doctrines of federal preemption and intergovernmental immunity." ECF No. 32 at 1 (emphasis added); ECF No. 32-1 at 32.

The phrasing of the United States's cross-motion was unusual. Federal courts are not in the business of issuing "holdings." Federal courts have no authority to issue "advisory opinions"

on the important political debates of the day. *Haaland*, 599 U.S. at 294. While courts express opinions, and set forth holdings, in the course of providing relief to prevailing parties, it is the federal court's "judgment, not its opinion, that remedies an injury." *Id.* Consequently, "[r]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Id.* Of course, the Court presumes that the United States was not actually requesting a mere "holding," yet the absence of particularized requests for relief in its cross-motion left the Court uncertain what relief the United States did, in fact, seek, assuming its claims had merit.[1]

After Defendants filed their responsive brief to the cross-motion, but before the United States filed its final brief, City Council and Mayor Evans approved amendments to Rochester's Municipal Code, which reinforced the City's self-designation as a "Sanctuary City." *See* Rochester, New York, Ordinance No. 2025-283. In some ways, the ordinance tracks the language of the 2017 orders at issue in this case—for example, it prohibits the Rochester Police Department from "[e]ngaging in certain activities solely for the purpose of enforcing federal immigration laws," Rochester, New York, City Code § 63-21(A)(2)(a); *see also* ECF No. 1-3 t 5 (General Order 502); ECF No. 1-2 at 4 (Resolution 2017-5), and bars city personnel from "assist[ing] in the enforcement of Federal immigration policies," Rochester, New York, City Code § 63-21(A)(4); *see also* ECF No. 1-2 at 4. In other ways, the amendments could be read more broadly than prior directives. For example, the amendments purport to bar the City *and* private persons "under agreement with the City" from "discourag[ing] Immigrants or their children from seeking opportunities, reporting crimes, or accessing services." *Id.* § 63-21(A)(1). It is unclear how liberally that provision is to be construed, but, at its broadest, it could be read to impose restrictions

---

[1] The cross-motion makes no mention of injunctive relief, for example.

3

on certain kinds of speech—*i.e.*, speech by city employees and city contractors that would discourage noncitizens from making use of city resources[2]—as well as on conduct having a similar effect.

The United States subsequently filed its final brief, which did not address these amendments. The brief did provide some more clarity on the nature of the United States's requested relief; it asked the Court to "enter judgment in [the United States's] favor on all claims and *enjoin* the Rochester sanctuary city law and policies." ECF No. 56 at 19 (emphasis added). Thus, it appears that the United States is continuing to seek a permanent injunction, though it does so without addressing the relevant four-factor test, *see U.S. S.E.C. v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 296 (2d Cir. 2014); without submitting any evidence; and without proffering a proposed order that would clarify the exact parameters of the injunctive relief, *cf.* Fed. R. Civ. P. 65(d) (stating that every order granting an injunction must, *inter alia*, "state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained").[3]

The issues presented in this case are, as the briefs of the parties and *amici* make clear, substantial and deeply contested. The political significance of the questions raised in this litigation

---

[2] Because the amendments take the position that the mere "*enhanced threat* of detention and deportation" could discourage noncitizens from making use of city services, *see* Rochester, New York, City Code § 63-20(c) (emphasis added), a broad reading of the amendments would bar private city contractors from even calling for increased federal immigration enforcement in Rochester. To be sure, narrower constructions of the amendments are certainly available; the Court's point is simply that the amendments present an intervening development requiring further analysis.

[3] The Court harbors some concern as to the proper scope of the injunctive and declaratory relief that the United States has requested. For one thing, it is unclear what role, if any, City Council and Melendez play in *enforcing* the 2017 directives against police officers and, therefore, what purpose an injunction or declaration against them would serve. *Cf.* ECF No. 1-3 at 9 (stating that RPD supervisors may discipline officers for violations of General Order 502). In addition, it cannot be that the 2017 sanctuary policies should be enjoined or declared unenforceable *in toto*, as several of their provisions are entirely lawful and noncontroversial. *See, e.g., id.* at 4 (stating that police officers must comply with the Federal and State Constitutions); *cf. Brooks v. Giuliani*, 84 F.3d 1454, 1467 (2d Cir. 1996) ("Injunctive relief should be narrowly tailored to address specific harms and not impose unnecessary burdens on lawful activity." (internal quotation marks omitted)). While the Court is able to glean from the papers the particular provisions which the United States challenges, it remains incumbent upon the United States to, in the first instance, articulate its requested relief with clarity and precision.

make it all the more important for the Court to carefully and precisely frame the relevant legal issues and tailor its analysis accordingly. *Cf. Ryan v. U.S. I.C.E.*, 974 F.3d 9, 18-19 (1st Cir. 2020) (discussing the court's limited task in the context of litigation over immigration arrests at state courthouses, and observing that the public policy questions underlying the litigation remained "within the domain of the politically accountable branches of the federal and state governments"). The absence of precisely defined relief on the part of the United States would make that task more difficult.

At present, however, the Court need not undertake that analysis. This is because, as just discussed, the City has recently codified new sanctuary policies that none of the parties or *amici* have addressed. That intervening development renders the United States's challenge to the 2017 directives moot. "A case that becomes moot at any point during the proceeding is no longer a 'Case' or 'Controversy' for purposes of Article III, and is outside the jurisdiction of the federal courts. In order to satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *Doe v. Decker*, No. 18-CV-3573, 2019 WL 2513838, at *2 (S.D.N.Y. June 18, 2019) (internal quotation marks and citation omitted). Where, as here, an intervening development undercuts the basis for "subject-matter jurisdiction, courts are obligated to consider [such issues] *sua sponte*." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

Here, the United States's claims, *as currently pleaded*, are moot because the Court can no longer "grant any effectual relief." *Lettieri v. F.B.I.*, No. 24-1723, 2024 WL 5457971, at *1 (2d Cir. Oct. 24, 2024). Even if the Court were to fully adopt the United States's position and enjoin Defendants from enforcing the 2017 sanctuary policies, the unchallenged 2025 amendments would act as an independent bar preventing the local cooperation, assistance, and information-sharing

5

that the United States desires.  *See, e.g., id.* (challenge to three-strikes order became moot where district court subsequently barred plaintiff from proceeding *in forma pauperis* due to "his vexatious litigation practices"); *United States v. Conlan*, 520 F. App'x 246, 247 (5th Cir. 2023) (mem. op.) (appeal over legality of detention under 18 U.S.C. § 4247(b) became moot after issuance of "later, unchallenged detention order"); *People's Party of Florida v. Fla. Dep't of State, Div. of Elecs.*, No. 22-12451, 2022 WL 3657210, at *2 (11th Cir. Aug. 25, 2022) (summary order) (candidate's challenge to ballot-qualification requirement rendered moot after candidate failed to satisfy other ballot qualifications by statutory deadline).

Accordingly, the complaint must be dismissed without prejudice as moot.  Presuming that the United States wishes to challenge the 2025 amendments on the same grounds as the 2017 directives, and to ensure that this litigation proceeds in an orderly and efficient manner, the Court grants the United States leave to file an amended complaint by December 19, 2025.  In any amended complaint, the United States should take care to articulate with precision the specific provisions that it challenges and the specific relief it seeks.  *See* note 3, *supra*.

IT IS SO ORDERED.

Dated: November 13, 2025
       Rochester, New York

                                              _____
                                              HON. FRANK P. GERACI, JR.
                                              United States District Judge
                                              Western District of New York