UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA,

                    Plaintiff,

     v.

THE CITY OF ROCHESTER, et al.,

                  Defendants.

**Case No. 25-cv-6226**

**Hon. Frank P. Geraci, Jr.**

## DEFENDANTS' MEMO OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF 77)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................1

      I.       The City's Sanctuary Law and Policies ...................................................1

      II.     Procedural Posture ..................................................................................5

STANDARD OF REVIEW ...............................................................................................5

ARGUMENT .....................................................................................................................7

      I.       The Motion is Premature ........................................................................7

      II.     The United States Fails to Demonstrate Its Entitlement to Summary Judgment.........11

          a.  In the alternative, summary judgment should be granted to defendants......................14

      III.    Plaintiff Is Not Entitled to the Relief Requested ..........................................16

CONCLUSION...................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Anderson v Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................... 6

*Atticus LLC v Dramatic Pub. Co.*, 145 F.4th 257 (2d Cir. 2025) ..................................... 8

*Bank of New York Mellon Trust Co., N.A. v Telos CLO 1006-1 Ltd.*, 274 F. Supp 3d 191

  (S.D.N.Y. 2017) ............................................................................................................ 8

*Berger v. United States*, 87 F.3d 60 (2d Cir. 1996) .......................................................... 8

*Brown v Eli Lilly & Co.*, 654 F.3d 347 (2d Cir. 2011) ..................................................... 6

*Celotex Corp. v Catrett*, 477 U.S. 317 (1986) ................................................................ 12

*Chambers v TRM Copy Centers Corp.*, 43 F.3d 29 (2d Cir. 1994) ................................. 12

*Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374 (2d Cir. 2001) .................... 8

*Crawford v Franklin Credit Mgmt. Corp.*, 758 F.3d 473 (2d Cir. 2014) ........................ 6

*Crawford v Hughes*, 2016 WL 1276473 (W.D.N.Y. Mar. 30, 2016) ........................... 10

*Elliot v Cartagena*, 84 F.4th 481 (2d Cir. 2023) ......................................................... 8, 9

*Ezeh v McDonald*, 2016 WL 118112000 (W.D.N.Y. May 2, 2016) ......................... 8, 11

*Fox v Cheminova, Inc.*, 387 F. Supp. 2d 160 (E.D.N.Y. 2005) ..................................... 11

*Helios Int'l S.A.R.L. v Cantamessa USA, Inc.*, 23 F. Supp 3d 173 (S.D.N.Y. 2014) .................... 8

*Hellstrom v U.S. Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000) ........................ 7

*Houston v Sheahan*, 2016 WL 554849 (W.D.N.Y. Feb. 10, 2016) .............................. 10

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liability Litig.*, 725 F.3d 65 (2d Cir. 2013) .... 12

*James v Mosko*, 2016 WL 8671478 (W.D.N.Y. Jul. 22, 2016) ..................................... 10

*Johnson v Xerox Corp.*, 838 F. Supp. 2d 99 (W.D.N.Y. 2011) ..................................... 16

*Knight v U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986) ................................................... 6

*Lunts v Rochester City Sch. Dist.*, 515 F. App'x 13 (2d Cir. 2013) ................................. 9

*Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 U.S. 574 (1986)...................................... 6

*Meloff v New York Life Ins. Co.*, 51 F.3d 372 (2d Cir. 1995)............................................................. 9

*Muhammad v Annucci*, 2024 WL 945226 (W.D.N.Y. Mar. 5, 2024)............................................ 10

*New York State Rest. Ass'n v New York City Bd. of Health*, 556 F3d 114 (2d Cir 2009) ............. 11

*New York State Telecomms. Ass'n, Inc. v James*, 101 F.4th 135 (2d Cir. 2024) .......................... 11

*PLIVA, Inc. v Mensing*, 564 U.S. 604 (2011) ................................................................................ 11

*Printz v United States*, 521 U.S. 989 (1997).................................................................................. 15

*Robinson v Concentra Health Servs. Inc.*, 781 F.3d 42 (2d Cir. 2015) .......................................... 6

*Rodriguez v. Weprin*, 116 F.3d 62 (2d Cir. 1997)........................................................................... 11

*Scott v Harris*, 550 U.S. 372 (2007) ........................................................................................ 6, 15

*Toussie v Allstate Insurance Co.*, 213 F. Supp. 3d 444 (E.D.N.Y. 2016) .................................... 10

*United States v Colorado*, 25-cv-1391-CPG-KAS, 2026 WL 878882 (D. Col. Mar. 31, 2026). 14,
15

*United States v Illinois*, 796 F. Supp. 3d 494 (N.D. Ill. 2025)...................................................... 15

*United States v New York*, 810 F. Supp. 3d 329 (N.D.N.Y. 2025)............................................... 15

*Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241 (2d Cir.2004) ................................... 12

*Ward v Rodriguez*, 2025 WL 254493 (W.D.N.Y. Jan. 21, 2025).................................................. 10

*Weinstock v Columbia University*, 224 F.33d 33 (2d Cir. 2000).................................................. 12

**Statutes**

8 U.S.C. § 1357 ................................................................................................................. 3

Fed. R. Civ. P. 1 ............................................................................................................... 11

Fed. R. Civ. P. 12 ..................................................................................................... 5, 7, 14

Fed. R. Civ. P. 56 .................................................................................................... passim

Fed. R. Civ. P. 8(c) ........................................................................................................... 8

Rochester City Code § 63-11 ........................................................................................ 2, 3

Rochester City Code § 63-20 ........................................................................................... 2

Rochester City Code § 63-21 ........................................................................................ 2, 3

## PRELIMINARY STATEMENT

The United States' motion for summary judgment is the latest instance of its ongoing effort to co-opt the City of Rochester into enforcing federal immigration law, now by seeking the court's imprimatur on plaintiff's own untested allegations before any discovery has been (or could be) conducted. The federal government seeks to upend basic principles of federalism with this lawsuit, and it seeks to upend the sequence of litigation under the Federal Rules of Civil Procedure with this premature motion. Defendants respectfully submit that the Court should deny this motion. Alternatively, should the Court not determine that this motion is premature, defendants respectfully submit that the Court should grant defendants summary judgment pursuant to Rule 56(f)(1).

## STATEMENT OF FACTS

### I.    The City's Sanctuary Law and Policies

On May 15, 1986, by Council Resolution 86-29, City Council recognized Rochester as a "City of Sanctuaries." *See* ECF 66-1 ("Kieburtz Decl.") at 87-89 ("1986 Resolution"). The 1986 "City of Sanctuaries" Resolution recognized that the regulation of immigration is a matter of federal jurisdiction and it is the responsibility of federal officials to implement federal immigration and refugee policy. *Id.* The 1986 Resolution further resolved that the City administration should "direct [City] employees to exclude refugee status as a consideration in their daily activities and routine dealings with the public, with the provisio [sic] that this directive should not be construed as approval to violate any law or encourage interference in law enforcement efforts[.]" *Id.*

On February 21, 2017, City Council enacted the 2017 Resolution which assured immigrants and refugees that they were free to contact RPD or any other City agency without fear of adverse immigration consequences by restricting City officials from participating in civil

immigration enforcement. *See* ECF 59-1 ("2017 Resolution") at 2-4. The 2017 Resolution barred the use of City funds or personnel to enforce federal immigration policies and barred City officials from inquiring into anyone's immigration status, "except to the extent specifically required by law and subject to the principles embodied in the Constitutions of the United States and the State of New York." *Id.*

On August 27, 2025, Mayor Evans approved – City Council having passed – the 2025 Ordinance. *See* ECF 59-5 ("2025 Ordinance") at 2. The 2025 Ordinance, inter alia, amended the City's local law relating to human rights by adding a chapter relative to immigrants. *See* City Code §§ 63-11, 63-20 and 63-21 (collectively, "Sanctuary City Law"). The Sanctuary City Law sets forth legislative findings which, inter alia, affirm the 1986 and 2017 Resolutions. *See* City Code § 63-20. City Council's legislative findings also note an enhanced threat to all undocumented immigrants, not just "violent criminal aliens," of detention and deportation. City Code § 63-20(C). The 2025 Ordinance carried the 1986 and 2017 resolutions forward and finally enshrined the City's sanctuary status in law. *See generally* 2025 Ordinance; Sanctuary City Law.

The Sanctuary City Law bars the City or any person under agreement with the City from, inter alia, prohibiting or discouraging immigrants from reporting crimes or accessing services. *See* City Code § 63-21(A)(1). The Sanctuary City Law prohibits RPD officers from enforcing immigration laws; RPD officers may not inquire about the immigration status of any individual unless necessary to investigate criminal activity. *See* City Code § 63-21(A)(2)(a). RPD officers may not "[s]top, question, interrogate, investigate, or arrest an individual based solely on actual or suspected immigration or citizenship status." City Code § 63-21(A)(2)(b). No City official may inquire about immigration status unless otherwise required by law. *See* City Code § 63-21(A)(3).

Broadly, City funds and personnel may not be used to "assist in the enforcement of federal immigration policies." City Code § 63-21(A)(4).

The 2025 Ordinance also enacted an enforcement provision into the City's statutory scheme on human rights whereby violations of, inter alia, the Sanctuary City Laws may be investigated by the Mayor at City Council's behest; and violations of the Sanctuary City Laws may be grounds for discipline and removal of City employees. *See* City Code § 63-11 ("Enforcement Provision").

On September 4, 2025, RPD issued General Order 502 regarding "Equitable Policing." *See* ECF 59-6 ("GO 502") at 2-13. GO 502 attaches the 2017 Resolution and references the 2025 Ordinance. *See* GO 502 § II(C)(1). GO 502 provides that RPD officers "shall not perform the functions of a federal immigration officer or otherwise engage in the enforcement of federal immigration law under 8 U.S.C. § 1357(g) or any other law, regulation, or policy." GO 502 § III(C). GO 502 prohibits RPD officers from engaging in police activities "solely for the purpose of enforcing federal immigration laws or policies" (GO 502 § V(A)), or from inquiring about "the immigration status of an individual, including a crime victim, a witness, or a person who calls or approaches the police seeking assistance, unless there is a specific and articulable need to do so to investigate criminal activity." GO 502 § V(B).

However, if provision of a police service is contingent on immigration or citizenship status or the inquiry "is required by federal, state, or local laws," then RPD officers may inquire about or request proof of immigration status of citizenship. GO 502 § V(C). GO 502 permits RPD officers to detain and turn over to federal immigration officials a person named in a judicial warrant or federal criminal arrest warrant. *Id*. § V(G)(1)(a). And it permits RPD officers to assist federal immigration officials in making lawful warrantless arrests for federal crimes. *Id*. § V(G)(1)(b).

RPD may likewise grant federal immigration officials access to persons in RPD custody who are named in a judicial warrant, federal criminal arrest warrant, or where there is probable cause to believe the person has committed a federal crime. *Id*. § V(G)(1)(c). But RPD will not honor civil immigration detainers. *Id.* § V(G)(2).

RPD officers will not request to see a person's immigration documents, but they may review immigration documents if a person voluntarily provides them in response to a request for proof of identity during an arrest, traffic stop, or investigative detention. *See* GO 502 § V(E)(1). "If provided immigration documents for identification purposes, [RPD officers] will not contact [federal immigration officials] regarding the person unless necessary to investigate criminal activity, and in accordance with the procedures set forth in [GO 502 § V(F)]". *Id*. § V(E)(2).

GO 502 § V(F) authorizes RPD officers to respond to calls for backup in exigent circumstances such as those involving an imminent threat to life or safety, "officer-in-trouble" calls, or when responding to a crime in progress. *See* GO 502 § V(F)(1). "When there is a call for assistance that does not involve an imminent threat to life or safety," an RPD supervisor shall acknowledge the request, ascertain whether an RPD response is needed, and respond to the scene to ensure RPD compliance with GO 502 if an RPD response is required. *Id* § V(F)(2). RPD officers must get authorization from an RPD Captain (or higher RPD official) during business hours, or from the staff duty officer ("SDO") during non-business hours, for "[a]ny other contact or request for assistance to" federal immigration officials. *Id*. § V(F)(3). All RPD contacts or requests to contact federal immigration officials "require a specific and articulable need for a criminal investigation, or must be otherwise permitted under § V[(G)] of [GO 502]." *Id*. § V(F)(4).

GO 502 also rescinded a prior General Order, dated March 23, 2017, of the same number. *See* GO 502 at 2 (noting it rescinds prior order). The Training Bulletin which summarized the 2017

4

version of the general order was rescinded, consequently the Training Bulletin summarizing it no longer has any force or effect. *See* Declaration of Beath at ¶27. Consequently, hereafter, references to the Sanctuary City Policies exclude the 2017 version of training bulletin and general order.

## II.    Procedural Posture

The United States filed its initial Complaint on April 24, 2025. *See* ECF 1. Thereafter, City Defendants answered (*see* ECF 6) before submitting a motion for judgment on the pleadings seeking to dismiss the initial Complaint. *See* ECF 8. The United States submitted a cross-motion for judgment on the pleadings (*see* ECF 32), and the Court also received briefing from amici. *See for example* ECF 55.

In a Decision and Order dated November 13, 2025, this Court dismissed the United States' initial Complaint as moot in light of the 2025 Ordinance, but the Court granted leave to file an amended complaint. *See* ECF 58. The AC was filed on December 19, 2025. City Defendants filed a motion to dismiss the AC pursuant to Rule 12 on January 30, 2026. *See* ECF 66 *et seq*. City Defendants' motion to dismiss the AC has been fully briefed and is pending determination by this Court. Despite the pending motion to dismiss – despite City Defendants having yet to answer the AC and the absence of any discovery – plaintiff filed the instant motion for summary judgment on all of its claims simultaneously with its opposition to City Defendants' motion to dismiss. *See* ECF 77 *et seq*; *see also* ECF 78 (United States' supporting memo of law[1]) ("US Br.").

### **STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact

---

[1] The United States filed an identical memo of law twice, once in opposition to defendants' motion to dismiss the AC and, second, in support of its motion for summary judgment.

and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986)). "The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v Concentra Health Servs. Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986). Moreover, pursuant to Rule 56(d), the court may allow parties time to "obtain affidavits or declarations or to take discovery" when the nonmovant demonstrates that it cannot present "facts essential to justify its opposition." Summary judgment is appropriate "[o]nly in the rarest of cases" where the non-moving party "has not been afforded

6

the opportunity to conduct discovery." *Hellstrom v U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). This is not one of those rare cases.

## ARGUMENT

Questions of fact preclude summary judgment on any of plaintiff's causes of action which might survive the pending motion to dismiss. The United States contends that defendant's laws and policies "prohibit and restrict City personnel, particularly police, from conveying information regarding the citizenship or immigration status, lawful or unlawful, of any individual, to the Department of Homeland Security ("DHS")." ECF 79 at 11 ("US Br.").[2] That contention is belied by the documents appended to the complaint itself (*see for example* 2017 Resolution). And that is only one of several material factual disputes that defendants intend to develop in discovery should their dismissal motion not be granted in full. The accompanying Declaration of Patrick Beath establishes that facts necessary for defendants to support defendants' opposition to this motion remain in the exclusive control of plaintiff. Discovery is necessary to elicit those facts. For that reason, this motion is premature pursuant to Rule 56(d), and defendants begin there.

## I.    The Motion is Premature

"Although [Rule 56 of the Federal Rules of Civil Procedure] allows a motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had." Fed. R. Civ. P. 56, Advisory Committee's Notes (2010 amendments). Here, City Defendants have not answered the amended complaint, nor has this Court ruled on defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6). The Second Circuit has recently emphasized the importance of nonmovant's ability to "file a responsive pleading" to the

---

[2] All page citations reference the ECF pagination.

7

question whether summary judgment is premature. *Atticus LLC v Dramatic Pub. Co.*, 145 F.4th 257, 278 (2d Cir. 2025) (noting that Rule 8(c) requires certain affirmative defenses be raised in an answer).

"Indeed, summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition," and here discovery has yet to even commence. *Elliot v Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023) (quotation omitted); *see Bank of New York Mellon Trust Co., N.A. v Telos CLO 1006-1 Ltd.*, 274 F. Supp 3d 191, 214 (S.D.N.Y. 2017); *Helios Int'l S.A.R.L. v Cantamessa USA, Inc.*, 23 F. Supp 3d 173, 188-189 (S.D.N.Y. 2014); *Ezeh v McDonald*, 2016 WL 118112000, at *1 (W.D.N.Y. May 2, 2016) ("The Court typically will not *consider* a motion for summary judgment until the parties have had an adequate opportunity to conduct discovery") (emphasis added). "When a party has not had <u>any</u> opportunity for discovery, summary judgment is generally premature." *Elliot*, 84 F.4th at 493 (emphasis in original), citing *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996); *see Anderson*, 477 US at 250 n.5 ("[S]ummary judgment [may] be refused where the nonmoving party had not had the opportunity to discover information that is essential to his opposition.").

"[W]hen a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *Com. Cleaning Servs.,L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001). The Second Circuit articulated the following test to assess Rule 56(d) showings:

> "A party resisting summary judgment on the ground that it needs additional discovery in order to defeat the motion must submit an affidavit pursuant to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), showing: '(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'"

*Lunts v Rochester City Sch. Dist.*, 515 F. App'x 11, 13 (2d Cir. 2013), quoting *Meloff v New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995).[3]

Defendants have submitted a Declaration of Patrick Beath which sets forth the facts that defendants seek which are in plaintiff's control, and how they are to be obtained, as well as an explanation how those facts are reasonably expected to create a genuine issue of material fact ("Beath Decl."). As is set forth in that declaration, defendants seek discovery regarding, among other things, the alleged consequences of the Sanctuary City Law and Policies upon the United States' ability to engage in civil immigration enforcement. Plaintiff alleges that the Sanctuary City Law and Policies, which have existed in roughly their present form since 1986, have already or in the future might impact federal immigration enforcement. *See e.g.* ECF 59 ¶¶57-66. That is a factual allegation which defendants' vigorously dispute and, in the event any of plaintiff's claims survive the pending motion to dismiss, defendants expect to explore those fact questions by deposing – at a minimum – Steven J. Kurzdorfer, the Acting Field Officer Director at the Buffalo ICE Field Office, and John R. Modlin, Acting Deputy Commissioner for U.S. Customs and Border Protection, both of whom have submitted testimony in other litigations where the United States has claimed that its ability to enforce immigration laws is impeded by local law or policy. *See* Beath Decl.

The testimony of federal officials with responsibility for immigration enforcement in and around the City of Rochester will shed light on the material, disputed factual allegations that defendants' laws and policies have some effect on federal immigration enforcement. *See generally* Beath Decl. In the event that defendants submit an answer to the amended complaint, that answer

---

[3] Where, as here, the party resisting summary judgment has not been afforded any discovery at all, courts need not analyze the third and fourth *Meloff* factors. *See Elliot*, 84 F.4th at 493, n. 12.

would include affirmative defenses many of which might rely primarily on information outside the four corners of the amended complaint. Allowing the United States to proceed with its summary judgment motion would additionally prejudice defendants by precluding them from pleading any affirmative defenses.

Here, because plaintiff filed this motion at the pleading stage, the Court has yet to enter a scheduling order under Rule 16(b), and defendants have had no opportunity to take discovery, plaintiff's summary judgment motion should be denied as premature. *See James v Mosko*, 2016 WL 8671478, at *4 (W.D.N.Y. Jul. 22, 2016); *see also Muhammad v Annucci*, 2024 WL 945226, at *1 (W.D.N.Y. Mar. 5, 2024) (Geraci, J.) (summary judgment premature because nonmovant "[had] not yet had the opportunity to conduct any discovery and because their motion to dismiss under Rule 12(b)(6) remain[ed] pending"); *Crawford v Hughes*, 2016 WL 1276473, at *4-5 n.3 (W.D.N.Y. Mar. 30, 2016) (Geraci, J.) (noting that while the Court has discretion to allow a second bite at the apple, it is under no obligation to allow parties to file successive summary judgment motions); *Houston v Sheahan*, 2016 WL 554849, at *2 (W.D.N.Y. Feb. 10, 2016) (Geraci, J.) (noting that "jumbled nature" of combined motion pursuant to both Rule 56 and Rule 12 precluded Court from clearly analyzing any of movant's arguments under either applicable standard).

Denial of summary judgment as premature is particularly appropriate where, as here, the motion was filed before the parties had an opportunity to file responsive pleadings to the claims that are the subject of the motion. *See Toussie v Allstate Insurance Co.*, 213 F. Supp. 3d 444, 446 (E.D.N.Y. 2016) ("It would be manifestly unjust and a waste of judicial resources if all relevant claims could not be adjudicated in this litigation because plaintiff had sought summary judgment prior to answer"); *see also Ward v Rodriguez*, 2025 WL 254493, at *1 (W.D.N.Y. Jan. 21, 2025) (Geraci, J.) (denying summary judgment as premature where discovery had yet to commence).

10

Here, the United States provides counterarguments to affirmative defenses it anticipates that defendants will plead. *See* US Br. at 38-40 ("Rochester appears to assert that . . ."). But defendants are not circumscribed by plaintiff's presumptions in this regard. Defendants have a pending dismissal motion and have yet to assert affirmative defenses to the amended complaint, consequently it would be manifestly unjust to grant plaintiff summary judgment. *See* Fed. R. Civ. P. 1 (requiring district courts to secure "just, speedy, and inexpensive" determinations).

"The Court has the 'inherent power to control its docket' as 'part of its function of resolving disputes between parties,'" and that power includes the discretion to dictate the timing of motions. *Ezeh*, 2016 WL 11812000, at \*1, quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). Defendants respectfully request that the Court dismiss plaintiff's motion for summary judgment as premature or, in the alternative, stay the motion *sine die* pending the outcome of defendants' pending motion to dismiss the amended complaint.

## II.    The United States Fails to Demonstrate Entitlement to Summary Judgment

Summary judgment on claims of express and conflict preemption will be denied where the moving party fails to "flesh out" the "precise contours" of the allegedly preempted state or local law. *Fox v Cheminova, Inc.*, 387 F. Supp. 2d 160, 168-169 (E.D.N.Y. 2005); *see New York State Rest. Ass'n v New York City Bd. of Health*, 556 F3d 114, 123 (2d Cir 2009) (given traditional primacy of state and local regulation of health and safety matters, such regulations can normally coexist with federal regulations and courts have a duty to accept readings of such regulations which disfavor preemption); *see also New York State Telecomms. Ass'n, Inc. v James*, 101 F.4th 135, 155 (2d Cir. 2024) (conflict preemption burden is "heavy" and mere tension between state and federal law is generally insufficient to carry that burden); *PLIVA, Inc. v Mensing*, 564 U.S. 604, 641 (2011) (in the context of express pre-emption, courts read federal statutes whenever possible not to

11

preempt state law). The party "asserting that federal law preempts state law bears the burden of establishing preemption." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liability Litig.*, 725 F.3d 65, 96 (2d Cir. 2013). On summary judgment, the burden of showing the absence of any issue of material fact rests with the movants. *See Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986). The movant must point to evidentiary materials in the record. *See* Rule 56(c). And movant must "go beyond the paper allegations of the pleadings." *Weinstock v Columbia University*, 224 F.33d 33, 41 (2d Cir. 2000).

If the movant does not meet its burden to produce admissible evidence, then summary judgment must be denied even if no opposing evidentiary matter is presented by the nonmovant. *See Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir.2004). And if there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *See Chambers v TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

Here, the United States cannot support its summary judgment motion with citations to a Rule 56 "record" because none yet exists in this case. A brief overview of the United States statement of undisputed material facts confirms as much because it cites to only one source: the amended complaint, which is unverified, and the attachments thereto. *See generally* ECF 77-1. Moreover, the United States motion is fatally imprecise, especially given the heavy burden it bears on its preemption claims, but the vagueness extends to its motion as it concerns intergovernmental immunity as well. *See* US Br. at 29 (defendants policies "at odds" with federal law), 30 (2025 Ordinance "is so broad that it could mean . . ."), 32 ("states and localities have some flexibility in the degree to which they actively assist federal officials in enforcing immigration laws"), 35

12

("federal contracts could be impaired"). Even if these allegations were evidence, which they are not, they would be insufficient to carry the United States' burden on this motion.

None of the allegations in the amended complaint have been tested in discovery, yet the United States asks the Court to both accept the truth of those allegations and then impose judgment as a matter of law against defendants. And those unverified, untested allegations are hardly undisputed, as defendants' response to plaintiff's statement of undisputed material facts demonstrates. At the core of this case sits the heavily contested allegation that defendant's laws and policies prohibit its officials from sharing "information regarding citizenship or immigration status with federal immigration authorities." ECF 77-1 ¶13. But, as defendants argue at length in their motion to dismiss the amended complaint (*see for example* ECF 75 at 17), that allegation is simply counter-factual. And the question whether defendants are entitled to the presumption against preemption points up yet another material factual dispute, which is whether defendants' challenged laws and policies are public safety measures – as defendants contend – or whether they are immigration regulations as plaintiff asserts. *See* US Br. at 24. Disputes of fact predominate this case.

Plaintiff also fails to demonstrate – nor does it even allege – that any alleged injury is fairly traceable to Council President Miguel A. Melendez, Jr. *See generally* AC; US Br. Only three paragraphs of the amended complaint even mention President Melendez. The United States simply criticizes him for his statements in support of Defendants' laws and policies. *See* ECF 59 ¶¶1, 17, 55. Nowhere does the AC allege President Melendez has any enforcement powers relative to the Sanctuary City Law and Policies, nor is he even mentioned in plaintiff's summary judgment motion. *See generally* US Br. Consequently, the United States lacks standing to sue President Melendez and the causes of action as against him should be dismissed in their entirety.

13

This motion does not satisfy the Rule 56(c) requirement that evidentiary materials, rather than untested and unverified allegations, be supplied in support of a summary judgment motion. Disputed and material questions of fact permeate the causes of action as to which the plaintiff seeks judgment as a matter of law. Plaintiff's motion for summary judgment should be denied.

### a. In the alternative, summary judgment should be granted to defendants

In the event that the Court does not determine that plaintiff's motion is premature, defendants respectfully submit that summary judgment should be granted in their favor and the amended complaint dismissed with prejudice on that ground. In this regard, defendants incorporate by reference the entirety of their brief in support of the pending motion to dismiss the amended complaint. *See* ECF 66-2.

Defendants also respectfully refer the Court to a recent decision relevant to that determination. The District of Colorado recently dismissed an attempt by the United States to invalidate on preemption grounds four Colorado state laws and two Denver municipal laws. *See United States v Colorado*, 25-cv-1391-CPG-KAS, 2026 WL 878882, at *1 (D. Col. Mar. 31, 2026). That case, just like this one, involved one cause of action asserting conflict and express preemption, and two more causes of action asserting unlawful discrimination against and regulation of the federal government. *See Colorado*, 2026 WL 878882, at *1. There, as here, defendants moved to dismiss the action pursuant to Rule 12(b)(6). *See Colorado* at *1-2.

The United States arguments were broadly the same as in this case, it argued that limitations on local participation with federal immigration officials violated the supremacy clause. *Id.* The *Colorado* court looked to its sister courts' recent rulings on roughly identical motions in roughly identical cases, and it held that "the basis for Plaintiff's claims is an interpretation of Congress's authority to regulate immigration that would compel state assistance." *Id* at *3 (citing *United States*

*v Illinois*, 796 F. Supp. 3d 494, 532 (N.D. Ill. 2025); *United States v New York*, 810 F. Supp. 3d 329, 355 (N.D.N.Y. 2025)). Pointing to Tenth Amendment, the *Colorado* court noted that the Supreme Court has recognized that the Constitution does not confer upon Congress "the power to compel states to implement federal regulatory programs." *Id*. at *4 (citing *Printz v United States*, 521 U.S. 989, 925 (1997)). The *Colorado* court observed that, in order to preserve our system of dual sovereignty, "state legislatures must necessarily be free to govern according to the interests and will of their constituents, not Congress." *Id.* "According to these principles, state [and local] implementation and enforcement of the federal immigration scheme is necessarily voluntary." *Id.*

The *Colorado* court – like the *Illinois* and *New York* courts – realized that the United States seeks to "effectively mandate" state and local implementation of the federal immigration scheme by means of its claims against the *Colorado* defendants. *Id.* at *5. Here, the United States aim is precisely the same. That is, to co-opt the City of Rochester into enforcing federal immigration law. The *Colorado* court thus dismissed that action because any other holding "would run afoul of the Tenth Amendment." *Id.* at *6 n.4 (noting that it was "wholly in accord" with the *Illinois* and *New York* courts, adopting their analysis and reasoning, and noting that the fact those courts resided in different Circuits "bears little relevance in this circumstance because much of the foundation of their analysis is based in the United States Constitution and interpretation thereof by the United States Supreme Court (as opposed to Circuit-specific law) and is thus *stare decisis* for all Circuits"). Defendants respectfully submit that the *Colorado* court's analysis applies with equal force in this case. That analysis is determinative of this motion, should the Court not deem it premature and is likewise determinative of the pending motion to dismiss the amended complaint.

Considered in the light most favorable to the United States, the undisputed material facts clearly demonstrate that no rational jury could find in its favor on its preemption claims. *See Scott*,

550 U.S. at 380. Likewise, "the evidentiary materials in the record, if reduced to admissible evidence," would be insufficient to carry the United States' burden of proof at trial. *Johnson v Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011). Consequently, the United States' motion for summary judgment on its first cause of action must be denied, and defendants are entitled to an Order entering summary judgment against the United States. *See generally* ECF 66-2.

### III.    Plaintiff Is Not Entitled To The Relief Requested

In granting defendants motion to dismiss the initial complaint, the Court noted that it "harbors some concern as to the proper scope of the injunctive and declaratory relief that the United States has request." ECF 58 at 4 n.3. Since that time, rather than narrow its requested relief or "articulate its requested relief with clarity and precision" (*id.*), as the Court instructed plaintiff to do, the United States has upped the ante by requesting an even broader scope of relief in relation to broadly the entirety of defendants Sanctuary City Law and Policies. *See* ECF (notice of motion); ECF (challenged provisions which includes the entirety of the 2025 Ordinance). The relief requested by the United States is unjustified and manifestly improper.

### CONCLUSION

For the foregoing reasons, the City respectfully requests entry of an order:  denying plaintiff's motion for summary judgment; granting the City's motion to dismiss the Amended Complaint in its entirety; and providing for such other and further relief as the Court deems proper.

Dated:  May 8, 2026
Rochester, New York

PATRICK BEATH
Corporation Counsel

By:    s/ *James "Hal" Kieburtz*_____
       James "Hal" Kieburtz, Esq., Of Counsel
       *Attorneys for the City*
       30 Church Street, Room 400A
       Rochester, NY 14614
       Tel.:  (585) 428-6758

To:    Attorneys of Record, via ECF

16